# United States District Court
# Central District of California

| | |
|---|---|
| JAMAL F. HOLCOMB, | Case No. 2:19-cv-02108-ODW (ASx) |
| Plaintiff, | **ORDER GRANTING MOTION TO REMAND [15]** |
| v. | |
| WEISER SECURITY SERVICES, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

On February 7, 2019, Plaintiff Jamal F. Holcomb ("Holcomb") filed this putative class action in Los Angeles Superior Court against his employer Weiser Security Services, Inc. ("Weiser"). (Decl. of Bradley E. Schwan Ex. A ("Compl."), ECF No. 1-2.) On March 21, 2019, Weiser removed the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (Notice of Removal ("Removal") ¶ 1, ECF No. 1.) Holcomb now moves to remand this action for lack of subject matter jurisdiction ("Motion"). (Mot. to Remand ("Mot."), ECF No. 15.) For the reasons discussed below, the Court finds that Weiser has not met its evidentiary burden to establish that the amount in controversy exceeds $5 million. Accordingly,

the Court **GRANTS** Holcomb's Motion to Remand and **DENIES** Holcomb's Motion for Reimbursement of Fees.[1]

## II. FACTUAL BACKGROUND

Holcomb brings this class action against Weiser on behalf of himself and the class he seeks to represent (collectively "putative class"). The putative class consists of "[a]ll current and former persons employed by Weiser . . . in California as non-exempt employees at any time during the period beginning four years prior to the filing of this Complaint." (Compl. ¶ 7.) Holcomb is a citizen of California. (*See* Compl. ¶ 6.) Weiser is incorporated and has its principal place of business in Louisiana. (Removal ¶ 22.) Holcomb alleges ten causes of action against Weiser: (1) Failure to Pay Minimum Wage; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Furnish Accurate Wage Statements; (6) Failure to Pay All Wages Due to Discharged and Quitting Employees; (7) Failure to Maintain Required Records; (8) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (9) Unfair and Unlawful Business Practices ("UCL"); and (10) Civil Penalties Under PAGA. (Compl. ¶¶ 38–96.) Holcomb does not allege a specific damages amount. (*See* Compl. at 23.)

Weiser removed the action to this Court on March 21, 2019, pursuant to CAFA. (Removal ¶ 2.) On July 11, 2019, Holcomb moved to remand arguing that Weiser's removal relies on speculative violation rates to calculate the amount in controversy (Mot. 1.) Holcomb contends that, as a result, Weiser has not established that the amount in controversy is met and, thus, the Court lacks subject matter jurisdiction. (Mot. 1.) Weiser opposes the Motion and argues that the amount in controversy is satisfied because Weiser calculated the alleged violation rates based on reasonable assumptions derived from the Complaint. (Opp'n to Mot. ("Opp'n") 9, ECF No. 20.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## III. LEGAL STANDARD

CAFA allows for federal jurisdiction over a purported class action when all of the following apply: (1) the amount in controversy exceeds $5 million (2) at least one putative class member is a citizen of a state different from any defendant, and (3) the putative class exceeds 100 members. 28 U.S.C. §§ 1332(d)(2), (5). "[T]he burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Generally, removal statutes are strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Id*. If the plaintiff disputes the alleged amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. The parties may submit evidence, "including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

## IV. DISCUSSION

Weiser asserts that removal is proper because there are more than 100 putative class members, minimal diversity is satisfied, and the amount in controversy exceeds $5 million. (Removal ¶¶ 2, 13–16, 24, 30.) Holcomb does not dispute that the class is over 100 members or that the parties are minimally diverse, but argues Weiser has not established the amount in controversy. (Mot. 4.)

Weiser contends that the face of the Complaint clearly demonstrates that the amount in controversy exceeds $5 million, and over $6,461,288.13 when including attorney's fees, reimbursement, and maintenance of records claims. (Removal ¶¶ 30, 71.) Weiser reaches this calculation by adding together Weiser's estimates for Holcomb's claims: (1) minimum wage, (2) overtime compensation, (3) meal periods, (4) rest periods, (5) accurate wage statements, (6) final wages due, (7) and attorney fees. (*See* Removal ¶ 71.) Holcomb argues that Weiser has not provided sufficient evidence in support of the amount in controversy and relies on fabricated violation rates in its amount in controversy calculation. (Mot. 6–8.)

## A.     Amount in Controversy

Holcomb does not allege a specific amount in damages, but seeks compensatory damages, available penalties, interest, costs and attorney's fees. (Compl., Prayer for Relief ¶¶ 1–12.) Weiser alleges that the amount in controversy, excluding attorney's fees, is $5,169,030.50. (Removal ¶ 71.) Holcomb responds that the amount in controversy, excluding attorney's fees, is only $2,994,767.50. (Mot. 8.)

### *1.     Determining the Violation Rate*

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the [$5 million] amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, No. 19-cv-5430-GW (JPRx), 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019). Hence, determining whether the amount in controversy exceeds $5 million is contingent upon whether Weiser's calculations of violation rates are reasonable. *See Ibarra*, 775 F.3d at 1197 (finding assumptions of damages "cannot be pulled from thin air but need some reasonable ground underlying them.") Weiser, as the removing party, bears the burden to establish that its asserted amount in controversy relies on reasonable assumptions. *Id.* at 1199.

"Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the

amount in controversy." *Dobbs v. Wood Group PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (*citing Ibarra*, 775 F.3d at 1199). "Generally, the spectrum of similar cases has two end-points: the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Id.* at 1188 (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). For instance, it is reasonable to assume a 100% violation rate if the "complaint specifically alleges a 'uniform' practice" and the plaintiff offers no competent evidence in rebuttal to a defendant's showing. *Id.* However, it is unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a "pattern and practice" of labor law violations. *Id.* at 1189 (citing *Ibarra*, 775 F.3d at 1198–99 ("a 'pattern and practice' of doing something does not necessarily mean *always* doing something")). In "pattern and practice" cases, the removing party may still establish the requisite amount in controversy if its calculations rely on extrapolations from admissible statistical evidence. *LaCross*, 775 F.3d at 1202–03.

   2. *Whether Weiser's Assumed Violation Rates are Reasonable*

  To reach the $5 million threshold, Weiser uses a 100% violation rate[2] for Holcomb's claims of (1) failure to provide meal periods; (2) failure to provide rest periods; and (3) failure to furnish accurate wage statements. (*See* Removal ¶¶ 50, 55, 60.) Weiser uses a calculation of one violation per week for failure to pay overtime wages. (*See* Removal ¶ 46.)

    a. *Meal and Rest Period Claims*

  Weiser argues that its assumption of a 100% violation rate for meal and rest breaks is reasonable based on language in the Complaint. (Opp'n 13–15.) For instance, Holcomb alleges that Weiser, "engaged in a uniform policy and systematic scheme of wage abuse." (Compl. ¶ 1.) Weiser also directs the Court to Holcomb's allegations of policies that denied employees meal and rest breaks. (*See* Opp'n 14.)

---

[2] A 100% violation rate calculation assumes violations occurring in every identified shift for each class member. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 n.3 (9th Cir. 2015).

Additionally, in connection with his UCL claim, Holcomb alleges that Weiser's "violations of California wage and hour laws . . . were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiff and Class members." (Compl. ¶ 87.)

However, courts in the Ninth Circuit have found a general allegation of a uniform policy and systematic scheme of wage abuse does not always support a 100% violation rate. *See Vilitchai v. Ametek Programmable Power, Inc.*, No. 3: 15-CV-1957-L (BLM), 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017) (finding "[a]lthough Plaintiff alleges Defendants had a 'uniform policy and systematic scheme of wage abuse,' such allegations do not support a 100% violation rate") (citations omitted); *Beck v. Saint-Gobain Containers*, No. 2:16-cv-03638-CAS (SKx), 2016 WL 4769716, at *9 (C.D. Cal. Sept. 12, 2016) (finding that the defendant impermissibly assumed a 100% violation rate where the plaintiff asserted in his general allegations that the defendant "engaged in a uniform policy and systematic scheme of wage abuse"); *but see Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) (finding the defendant's inference of 100% violation rate based on a "uniform policy" reasonable in light of the plaintiff's failure to rebut the defendant's evidence supporting such rates.). Accordingly, Holcomb's allegations that Weiser had a uniform policy or did something "repeatedly over a significant period of time" "does not necessarily mean [that Weiser was] *always* doing something," and therefore does not support a 100% violation rate. *Ibarra*, 775 F.3d at 1198–99.

Further, Holcomb makes it clear that he does not allege that Weiser "universally, on each and every shift, violate[d] labor laws." *Id.* For example, the Complaint does not allege that Plaintiff was *never* provided meal and rest breaks. To the contrary, Holcomb alleges "Plaintiff and similarly situated employees were *not at all times* provided 30-minute meal breaks." (Compl. ¶ 16 (emphasis added).) Holcomb alleges that he and the class members were not paid an additional hour *when*

a meal and rest break was missed or not provided (Compl. ¶¶ 16, 17), and are accordingly entitled to recover one-hour of premium pay for each day in which a meal or rest break violation occurred (Compl. ¶¶ 59, 64). The Complaint does not allege that class members missed all meal and rest breaks or even that Weiser failed to compensate them for every meal or rest break which was missed. Therefore, the Complaint alleges violations that are "clearly less than a 100% violation rate." *Leidy Silva Martinez v. BAART Programs, Inc.*, No. CV 19-07178-AB (PLAx), 2019 WL 6210932, at *2 (C.D. Cal. Nov. 21, 2019) (finding allegations of meal and rest break violations "at certain times" to be "clearly less than a 100% violation rate.").

Despite Weiser's "burden to show that its estimated amount in controversy relied on reasonable assumptions," Weiser provides no data from which the Court may extrapolate that Weiser denied *every* employee a rest and meal break *each day* they worked. *Ibarra*, 775 F.3d at 1199; *compare LaCross*, 775 F.3d at 1203 (finding defendant's calculations for the amount in controversy reasonable because the defendant extrapolated costs based on, "actual invoiced . . . costs" and the number of employees during the putative class period), *with Akana v. Estee Lauder Inc.*, No. LACV 19-00806-JAK (PLAx), 2019 WL 2225231, at *6 (C.D. Cal. May 23, 2019) (rejecting defendant's calculations for the amount in controversy because the defendant failed to provide relevant information necessary to calculate potential liability). Here, the only evidence Weiser submits is a Declaration from Charlene Lee-Sutherlin ("Lee-Sutherlin"), Weiser's Vice President of Human Resources. (Decl. of Charlene Lee-Sutherlin ("Lee-Sutherlin Decl.") ¶ 1, ECF No. 1-1.) In her declaration, Lee-Sutherlin provides the number of employees in the putative class, the weighted average hourly rate for those employees, and the number of work weeks. (Lee-Sutherlin Decl. ¶¶ 6–9.) However, Lee-Sutherlin is silent as to the lengths of shifts, employees' part-time or full-time status, or frequency of violations that may have occurred. (Lee-Sutherlin Decl. ¶¶ 6–9.) As such, Lee-Sutherlin's declaration provides no support for Weiser's estimated violation rates. *See Akana*, 2019 WL

2225231, at *5–6 (finding the defendant's declaration presenting evidentiary support of the number of class members, the number of class members that are former employees, and the hourly rate did not demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million). Consequently, Weiser fails to support its estimated meal and rest break violation rates.

### b. *Wage Statement Violations*

The Court finds that Holcomb's wage-statement violation claims are derivative of his meal and rest period claims. Holcomb contends that employees received inaccurate wage statements because Weiser did not include the pay due to the employees for missed meal and rest periods. (Compl. ¶¶ 16–17, 67–68.) If the calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also inherently flawed. *Marshall v. G2 Secure Staff, LLC*, No. 2:14-CV-04322-ODW (MANx), 2014 WL 3506608, at *3 (C.D. Cal. July 14, 2014). Accordingly, the calculations for wage statement violations are unreasonable for amount in controversy purposes as well.

### c. *Unpaid Overtime*

Weiser calculates the amount in controversy for unpaid overtime wages assuming one hour of unpaid overtime for each employee each workweek. (Removal ¶¶ 41–47.) The Court is not persuaded by Weiser's contention that it "conservatively assumed only one hour of unpaid overtime per workweek for each putative class member." (Opp'n 11.) Weiser offers no evidence supporting that a one-hour-per-workweek violation rate is suitable for calculation purposes. *See Toribio*, 2019 WL 4254935, at *3 (finding Defendant cannot "pull violation rates out of thin air, whether it characterizes them as 'conservative' or not, and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in the necessary calculation.") (citing *Ibarra*, 775 F.3d at 1193). Weiser fails to justify the use of a once-per-week violation rate over some other rate. *See Garibay v. Archstone Cmts. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) (finding the defendants failed to provide

evidence that the assumption of two rest break violations per week was "more appropriate" than one violation per pay period or one violation per month). Without evidentiary support, Weiser's violation rate is merely an assumption, seemingly plucked from thin air. Accordingly, the Court finds Weiser's overtime violation rate to be unreasonable.

Weiser fails to support its asserted violation rates for meal breaks, rest breaks, wage statements, and overtime.[3] Consequently, the Court finds that Weiser has not satisfied its burden to establish that the amount in controversy is greater than $5 million.[4]

**B.  Removal Fees**

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

---

[3] Weiser requests a short continuance to conduct discovery specific to the amount in controversy if the Court believes Weiser has not met its burden. (Opp'n 20.) The Court believes when "[f]aced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court, . . . with respect to what the Complaint's allegations actually mean with respect to violation rates." *Toribio*, 2019 WL 4254935, at *3. "[D]efendants in this type of litigation will either have to change their approach, . . . the Ninth Circuit will have to reconsider *Ibarra* and tell district courts to accept whatever number a defendant can imagine, or the Supreme Court or (don't hold your breath) Congress will have to step on to clear up what has become a wasteful and silly, but routine exercise in mathematical fantasy land." *Id*.

[4] The amount in controversy cannot reach the $5 million threshold without Holcomb's meal break ($1,091,785), rest break ($1,091,785), wage statement ($763,075), and overtime claims ($404,334) included in the calculation. The Court need not address the minimum wage and final wage claims to conclude that the amount in controversy has not been met. (*See* Opp'n 20) (the amount in controversy alleged with these two claims is $2,053,864). Weiser has not offered a figure for Holcomb's Business Expense, Records Violation and Overtime Miscalculation therefore, the Court will not consider an amount in controversy figure for these claims. (*See* Opp'n 20.)

Although Weiser fails to show that the Court has jurisdiction over this class action, the Court finds Weiser did not lack an objectively reasonable basis for removing the action and opposing Holcomb's Motion, particularly in light of courts' treatment in the Ninth Circuit of defendants' estimation of labor code violation rates. *See Toribio*, 2019 WL 4254935, at *3 ("District courts are all-over-the-map in deciding how to handle, and whether to accept, the type of approach . . . [the defendant] has adopted.") Therefore, the Court denies Holcomb's request for fees.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Holcomb's Motion, and **REMANDS** this case to the Superior Court of California for the County of Los Angeles, Case No. 19STCV03843 located at 111 North Hill Street, Los Angeles, California 90012. (ECF No. 15.) The Court **DENIES** Holcomb's requests for fees and costs incurred from removal. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

December 3, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**